IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARK ORTEGA,** individually and on behalf of all others similarly situated,<br><br><br>*Plaintiff,*<br><br>v.<br><br>**DITOMMASO INC.,**<br>**and DATA KING OF NEW YORK INC.,**<br>**and MERIDIAN SERVICES L.L.C.,**<br><br>*Defendants,* | Case No. 5:24-cv-369-JKP-ESC<br><br>**FIRST AMENDED COMPLAINT**<br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

<u>**SECOND AMENDED CLASS ACTION COMPLAINT**</u>

Plaintiff, Mark Ortega ("Plaintiff" or "Ortega") brings this Class Action Complaint and Demand for Jury Trial against Defendant DiTommaso Inc. ("DiTommaso"), Defendant Data King of New York, Inc. ("Data King") and Defendant Meridian Services L.L.C ("Meridian") (collectively as "Defendants") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making telemarketing calls to consumers without consent including calls to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff, for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### I.    PARTIES

1.    Plaintiff is a resident of San Antonio, Texas.

2.       Defendant DiTommaso is a New York Corporation.

3.       Defendant Data King is a New York Corporation.

4.       Defendant Meridian is a Florida Limited Liability Company.

## II.       JURISDICTION AND VENUE

5.       <u>Jurisdiction.</u> This Court has federal question subject matter jurisdiction over this action under 28 U.S.C §1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court also has supplemental jurisdiction because the Texas Telephone Solicitation Act ("TTSA") claim relates to the same telemarketing campaign as the TCPA.

6.       <u>Personal Jurisdiction.</u> This Court has personal jurisdiction over the Defendants because the Defendants transact business in this District and place calls to consumers into this District.

7.       <u>Venue.</u> Venue is proper in this District under 28 U.S.C § 1391(b) because the Plaintiff resides in this District and the wrongful conduct giving rise to this case was directed into this District.

## III.       INTRODUCTION

8.       In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.

9.       Section 227(c) of the TCPA requires the FCC to "initiate a rulemaking proceeding concerning the need to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1).

10.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. *See* 47 C.F.R § 64.1200(c)(2).

11.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

12.     The TCPA prohibits the initiation of the telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are made. 47 U.S.C. § 227(c)(5).

## IV.     FACTUAL ALLEGATIONS

13.     DiTommaso offers business loans under the name RCN Group Inc. ("RCN Group").[1]

14.     To generate business through sales, DiTommaso relies on telemarketing by third parties, such as Meridian.

15.     Upon information and belief, Defendants Data King and Meridian have common management, and are under common control. Upon information and belief, Data King and Meridian act in unison to accomplish acts such as those complained of herein.

16.     Plaintiff is an individual who was in Texas at the time of the messages.

17.     Plaintiff is, and has been at all times, material to this action, the regular and sole user of his cellular telephone number, which is (210) 744-XXXX.

18.     At all times material to this action, Plaintiff uses the cell phone with area code (210) and digits beginning with digits 744 primarily for residential purposes.

---

[1] https://www.thercngroup.com/apply-now

19.     Plaintiff registered his cellular telephone number with the National Do No Call Registry on or about January 23, 2012.

20.     Plaintiff registered his number to avoid receiving unwanted telemarketing and solicitation calls.

21.     Plaintiff uses his cell phone primarily for personal, residential, and household purposes.

22.     Plaintiff never provided Defendant with his express consent to be contacted.

23.     Plaintiff has no existing business relationship with Defendant.

24.     Even though Plaintiff registered his cell phone number on the DNC, and despite the fact that Plaintiff did not consent to Defendants' solicitation calls, DiTommaso sent Plaintiff at least two telemarketing messages.

25.     Upon information and belief, Meridian placed telemarketing calls to Plaintiff's number on February 29, 2024.

26.     When Plaintiff answered the call, there was a distinct pause and delay before anyone answered.

27.     The distinct pause and delay before a live representative answered Plaintiff's call demonstrates that the dialing system used possessed the present capacity to store or produce telephone numbers and dial those numbers automatically. This shows that the system was working through a list of numbers and not operating under the direct control of a human caller for each individual call.

28.     Upon information and belief, Meridian, on behalf of DiTommaso, transmitted a non-working number for a Caller ID.

4

29.     DiTommaso was not identified either through Caller ID or at the start of the telemarketing call, thus the Plaintiff went through the telemarketing process so he could identify the company.

30.     During the call, a customer representative spoke and asked Plaintiff a few questions regarding business loans. The call was then transferred to Remy Pastorelli ("Pastorelli"), an owner of DiTommaso, who spoke with Plaintiff about a line of credit.

31.     On or about February 29, 2024, Plaintiff received a text message from Pastorelli, from the number 631-292-0737, stating "this is Remy Pastorelli with The RCN Group."

32.     On or about February 29, 2024, Plaintiff informed Pastorelli via text message that he was not to be contacted further, as his number was registered on the DNC.  Disregarding this clear revocation of consent, Pastorelli sent two additional text messages that same day, stating: 'We just spoke before I don't know if you remember me,' and 'line of credit guy here.'  These messages constitute separate and distinct violations of the TCPA as they were sent after Plaintiff had expressly revoked consent to be contacted.

33.     On or about March 4, 2024, Plaintiff's attorney sent a letter to DiTommaso stating that Plaintiff is registered in the National Do Not Call Registry, did not consent to receiving communications from Defendant, and demanding damages.

34.     On or about March 5, 2024, DiTommaso responded to Plaintiff's counsel's email stating that DiTommaso engages a third-party call center to conduct telemarketing campaigns on its behalf.

35.     The unauthorized telephonic communications that Plaintiff received from Defendants, as alleged herein, have harmed the Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and occupied and otherwise disturbed the use and enjoyment of his phone.

36.     Seeking redress for these injuries, Plaintiff Ortega, on behalf of himself and Classes of similarly situated individuals, bring suit under the TCPA.

### DiTommaso's Liability for Data King and Meridian's Conduct

37.     For more than twenty years, the Federal Communication Commission ("FCC") has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 10 FCC Rcd. 12391, 12397, ¶ 13 (1995).

38.     On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 ¶ 1 (2013) ("May 2013 FCC Ruling").

39.     The Federal Communication Commission has instructed that sellers may not avoid liability by outsourcing telemarketing to third parties:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, … suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

May 2013 FCC Ruling, 28 FCC Rcd. at 6588, ¶ 37 (internal citations omitted).

40.     The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. *Id.* At 6586, ¶ 34.

41.     The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts. Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

*Id.* at 6592, ¶ 46.

42.     DiTommaso's business model, as evidenced by its own Terms and Conditions, demonstrates a reliance on telemarketing that extends beyond isolated transactions.  DiTommaso's website includes Terms and Conditions that explicitly state, 'You hereby expressly consent to receiving calls and messages, including auto-dialed and pre-recorded message calls and SMS messages...from The RCN Group, its affiliates, marketing partners, agents and others calling at The RCN Group's request or on its behalf...' This provision demonstrates that DiTommaso

anticipates and relies upon telemarketing as a key part of its operations for reaching out to potential customers.[2]

43.     DiTommaso engaged in a business relationship with Meridian for the purpose of generating sales leads through telemarketing. By outsourcing its telemarketing efforts to Meridian, DiTommaso established a systematic approach to soliciting business that cannot be characterized as isolated or infrequent transactions.

44.     DiTommaso accepted the benefits of Meridian's illegal telemarketing by taking live transfers of leads directly from Meridian.

45.     DiTommaso failed to take effective steps within its power to force Meridian to cease calling consumers that were registered in the Do Not Call Registry.

46.     By having Meridian initiate the calls on its behalf to generate new business, DiTommaso "manifest[ed] assent to another person … that the agent shall act on the principal's behalf and subject to the principal's control" as described in the Restatement (Third) of Agency.

47.     Moreover, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships --which consumers may acquire through discovery, if they are not independently privy to such information." *Id.* at 6592-593, ¶ 46. Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593, ¶ 46.

## V.     CLASS ACTION ALLEGATIONS

48.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure § 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

---

[2] *See* DiTommaso Inc., Terms and Conditions, https://www.thercngroup.com/services-4 (last visited June 25, 2024)

**National Do Not Call Registry Class:** All persons in the United States (1) whose telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) who received more than one telemarketing call from or on behalf of Defendants, (3) within a 12-month period, (4) at any time in the period that begins four years before the date of filing this Complaint through the date of trial.

**Telephone Consumer Protection Act Autodial Class:** All persons in the United States (1) who received a telemarketing call made using an automatic telephone dialing system or an artificial or prerecorded voice 2) to a prohibited phone line 3) without the prior express consent of the called party, 4) at any time in the period that begins four years before the date of filing this Complaint through the date of trial.

**Texas Telephone Solicitation Act Do Not Call Registry Class:** All persons in the United States (1) who received a telephonic sales call regarding Defendants' goods and/or services (2) to a number listed on the Texas No-Call list (3) at any time in the period that begins two years before the date of filing this Complaint through the date of trial.

49.     Defendants and its employees or agents are excluded from the Class. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during the course of this litigation.

50.     Plaintiff brings all claims in this action individual and on behalf of Class Members against Defendants.

## Numerosity

51.     Members of the Class are so numerous that their individual joinder is impracticable.

52.     On information and belief, based on the practices and technology used to call and message Plaintiff, Members of the Class number in the thousands.

53.     The precise number of Class Members and their identities are unknown to Plaintiff at this time but may be determined through discovery.

54.      Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants.

**Commonality**

55.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individuals Class Members.

56.     Common legal and factual questions, include, but are not limited to, whether Defendants have violated the Telephone Consumer Protection Act or Texas Telephone Solicitation Act, and whether Class Members are entitled to actual and/or statutory damages for the aforementioned violations.

**Typicality**

57.     The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other Class Members, received unsolicited telephonic sales calls from the Defendants without giving them his consent to receive such calls.

**Adequacy of Representation**

58.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class Members he seeks to represent, he has retained competent counsel, and he intends to prosecute this action vigorously.

59.     The interest of Class Members will be fairly and adequately protected by Plaintiff and his counsel.

**Superiority**

60.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class Members.

61.     Many of the Class Members likely lack the ability and/or resources to undertake the burden and expense of individually prosecuting what may be a complex and extensive action to establish Defendant's liability.

62.     Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. This strain on the parties and the judicial system would be heightened in this case, given the complex legal and factual issues at play.

63.     Individualized litigation also presents a potential for inconsistent or contradictory judgments.

64.     In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.

65.     Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**<u>Count I</u>**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. 227)**
**(On Behalf of Plaintiff and the Do Not Registry Class)**

66.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 65 of this Complaint and incorporates them by reference herein.

67.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c)(2), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

68.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

69.     Defendants violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry.

70.     Defendants violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone solicitation in a 12-month period made by or on behalf of the Defendants in violation of 47 C.F.R § 64.1200, as described above.

71.     As a result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

72.      To the extent Defendants' misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## COUNT II
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. 227(b))
### (On Behalf of Plaintiff and the Autodial Class)

73.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 65 of this Complaint and incorporates them by reference herein.

74.     The TCPA's implementing regulation, 47 USC § 227(b), provides that [i]t shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States … to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice § 227(b)(1)(A).

75.     Upon information and belief, Meridian placed telemarketing calls to Plaintiff's number on February 29, 2024 using an automatic telephone dialing system.

76.     As result of Defendants' conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(b)(3), are entitled, inter alia, to receive up to $500 in damages for such violation.

77.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(b)(3), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**Count III**
**Violation of Texas Telephone Solicitation Act**
**Tex. Bus. & Com. Code Ann. § 305**
**(On Behalf of Plaintiff and the Texas Telephone Solicitation**
**Act National Do Not Call Registry Class)**

78.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 65 of this Complaint and incorporates them by reference herein.

79.     It is a violation of the TTSA to "make a telephone call or use an automatic dial announcing device to make a telephone call for the purpose of making a sale if: (1) the person making the call or using the device knows or should have known that the called number is a mobile telephone for which the called person will be charged for that specific call; and (2) the called person has not consented to the making of such a call to the person calling or using the device or to the business enterprise for which the person is calling or using the device." *See* Tex. Bus. & Com. Code Ann. § 305.001.

80.     The TTSA states that "[a] person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A may bring an action

in this state against the person who originates the communication". *See* Tex. Bus. & Com. Code Ann. § 305.053.

81.    In violation of the TTSA, Defendants made and/or knowingly allowed telephonic communications to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent even though the Class members were on the National Do Not Call Registry.

82.    As a result of Defendants' conduct as alleged herein, and pursuant to § 305.053(b) of the TTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the Class members are also entitled to an injunction against future calls. *See id.*

83.    To the extent Defendants' misconduct is determined to be willful and knowing the Court should, pursuant to section 305.053(c) treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**Count IV**
**Violation of Texas Regulation of Telephone Solicitation**
**Tex. Bus. & Com. Code Ann. § 302**
**(On Behalf of Plaintiff and the Texas Telephone Solicitation**
**Act National Do Not Call Registry Class)**

84.    Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 65 of this Complaint and incorporates them by reference herein.

85.    Section 302.101(a) of Texas Business and Commerce Code requires sellers that makes a telephone solicitation from a location in Texas or to a purchaser located in Texas to hold "a registration certificate for the business location from which the telephone solicitation is made." Moreover, the Code requires a "separate registration certificate for each business location from which a telephone solicitation is made." *See id* (b).

86.     In violation of the Code, Defendants made telephonic solicitations to Plaintiff and Class Members without having a registration certificate for each business location at the time of the calls.

87.     As a result of Defendants conduct as alleged herein, and pursuant to § 302.302(a) of Tex. Bus. & Com. Code, Plaintiff and Class members were harmed and are each entitled to a maximum of $5,000.00 in damages for each violation.

88.     Under § 302.302(d), Plaintiff is entitled to "recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees."

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a)  Certification of the proposed Classes;

b)  Appointment of Plaintiff as representative of the Classes;

c)  Appointment of the undersigned counsel as counsel for the Classes;

d)  An order enjoining Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making telemarketing calls to numbers on the National Do Not Call Registry, absent an emergency circumstance;

e)  An award to Plaintiff and the Classes of damages, as allowed by law; and

f)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**MARK ORTEGA**, individually and on behalf of all others similarly situated,

By:

**ALMANZA TERRAZAS PLLC**
13423 Blanco Rd, PMB 8098
San Antonio, Texas 78216
Telephone: 512-900-9248
Email: paulina@almanza.legal

/s/ **Paulina Almanza**
 Paulina Almanza
 State Bar No. 24109580
 Attorney for Plaintiff Mark Ortega

## CERTIFICATE OF SERVICE

I certify that on June 25, 2024, a copy of this document was served on Counsel for Defendant DiTommaso, through the Court's CM/ECF filing system. A copy of this document was served on Defendant Data King of New York Inc. and Defendant Meridian Services L.L.C via certified mail, first class to the following addresses:

**DATA KING OF NEW YORK INC.,**
c/o New York Department of State
99 Washington Ave., 1 Commerce Plaza (6th floor),
Albany, NY 12260


**MERIDIAN SERVICES L.L.C.,**
c/o Robert Squiers
8774 Sonoma Lake Blvd.
Boca Raton, FL 33434

/s/*Paulina Almanza*
Paulina Almanza