IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **MARK ORTEGA,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>**DITOMMASO INC., DATA KING OF NEW YORK INC., AND MERIDIAN SERVICES L.L.C**<br><br>*Defendants,* | Case No. 5:24-cv-369-JKP-ESC |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT UNDER RULE 12(b)(6) OF THE FEDERAL RULES OF CIVIL PROCEDURE**

**Introduction and Background**

This case arises from Defendant DiTommaso Inc.'s ("DiTommaso") persistent and unwelcome intrusion into Plaintiff Mark Ortega's ("Plaintiff") privacy through unsolicited telemarketing calls and text messages. Despite Plaintiff registering his cell phone number on the National Do Not Call Registry ("DNC Registry") in 2012. EFC No. 16 (Second Amended Complaint, "SAC") at ¶ 19. Plaintiff never provided consent to be contacted (SAC ¶ 22), DiTommaso, through its agent Meridian Services, LLC ("Meridian"), placed a telemarketing call to Plaintiff on February 29, 2024 (SAC ¶ 25). During the call, Plaintiff was transferred to Remy Pastorelli ("Pastorelli"), a purported owner of DiTommaso (SAC ¶ 30), who attempted to solicit Plaintiff for business loans (SAC ¶ 30). After the call, Pastorelli sent Plaintiff two text messages, again promoting DiTommaso's business (SAC ¶¶ 31-32). Plaintiff informed Pastorelli that he was on the DNC Registry and did not wish to be contacted further (SAC ¶ 32). Disregarding this clear

1

revocation of consent, Pastorelli sent two additional text messages that same day, continuing to solicit Plaintiff (SAC ¶ 32).

Plaintiff brings this class action complaint alleging violations of the Telephone Consumer Protection Act ("TCPA"), the Texas Telephone Solicitation Act ("TTSA"), and the Texas Business and Commerce Code. DiTommaso now seeks to dismiss Plaintiff's claims, arguing, among other things, that Plaintiff consented to the communications and that Plaintiff has failed to adequately plead an agency relationship. As demonstrated below, DiTommaso's arguments are without merit, and Plaintiff has adequately pled viable claims under both federal and state law.

**Factual Background**

Plaintiff, Mark Ortega, is a resident of San Antonio, Texas. (SAC ¶ 1). To avoid unwanted telemarketing calls, Plaintiff registered his number with the DNC Registry on or about January 23, 2012. (SAC ¶ 19). Plaintiff has never had any business relationship with DiTommaso and has never provided DiTommaso with his express consent to be contacted with solicitations. (SAC ¶¶ 22-23). On February 29, 2024, Plaintiff received an unsolicited telemarketing call from Meridian on his cell phone. (SAC ¶ 25). When Plaintiff answered the call, there was a distinct pause and delay before a live representative responded, suggesting the use of an automated dialing system. (SAC ¶ 26). During the call, a customer service representative asked Plaintiff questions regarding business loans before transferring him to Remy Pastorelli. (SAC ¶¶ 30-31). Pastorelli identified himself as an owner of the RCN Group and spoke with Plaintiff about a line of credit. (SAC ¶ 31). Plaintiff later discovered, through research that DiTommaso offers business loans under the assumed name RCN Group Inc. ("RCN Group"). (SAC ¶¶ 13, 31).

On the same day as the call, Plaintiff received a text message from Pastorelli, from the number 631-292-0737, stating "this is Remy Pastorelli with The RCN Group." (SAC ¶ 31).

Plaintiff informed Pastorelli via text message that he was not to be contacted further, as his number was registered on the DNC. (SAC ¶ 32). Disregarding this clear revocation of consent, Pastorelli sent two additional text messages that same day, stating: "We just spoke before I don't know if you remember me," and "line of credit guy here." (SAC ¶ 32). On March 4, 2024, Plaintiff's attorney sent a letter to DiTommaso stating that Plaintiff is registered in the National Do Not Call Registry, did not consent to receiving communications from Defendant, and demanding damages. (SAC ¶ 33). None of the messages acknowledged Plaintiff's revocation of consent, demonstrating Defendant's blatant disregard for Plaintiff's request to cease contact.

In response, Plaintiff filed his class action complaint against Defendant. Defendant filed a Motion to Dismiss for Failure to State a Claim. *See* ECF 18.

**Argument**

**I.    Procedural Standard.**

As this Court explained in *Centex Homes v. Arias & Assocs.*, "Rule 8(a)(2) of the Federal Rules of Civil Procedure sets out the fundamental pleading standard for civil litigation and governs all claims in a civil suit, requiring 'a short plain statement of the claim showing that the pleader is entitled to relief.'" *Centex Homes v. Arias & Assocs.*, No. SA-12-CA-53-OG, 2012 U.S. Dist. LEXIS 193854, at *10 (W.D. Tex. May 18, 2012) (Garcia, J.). "[T]he complaint taken as a whole 'must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under <u>some</u> viable legal theory' and a plaintiff's pleading obligation includes the twin requirements of fact-based pleading and plausibility." *Id.* (emphasis in original). This Court added:

> Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must state a claim upon which relief can be granted or the complaint may be dismissed with prejudice as a matter of law. When considering a motion to dismiss for failure to state a claim, the "court accepts 'all well-pleaded facts as

true, viewing them in the light most favorable to the plaintiff.'"

*Id.* at *10.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The general rule is that courts should consider a motion to dismiss based on the four-corners of the plaintiff's pleadings, not the evidence that Defendants may seek to introduce in response." *Ramos v. Taylor*, No. 1:20-CV-1256-RP, 2022 U.S. Dist. LEXIS 227519, at *10-11 (W.D. Tex. Dec. 18, 2022) (Pitman, J.); *see also Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir. 1994) ("we must accept all well-pleaded facts as true, and we view them in the light most favorable to the plaintiff. We may not look beyond the pleadings. A dismissal will not be affirmed if the allegations support relief on any possible theory.").

## II. Plaintiff has Adequately Pled the Use of an ATDS.

DiTommaso argues that Plaintiff's ATDS claim should be dismissed because Plaintiff failed to plausibly allege the use of an ATDS. This argument fails as Plaintiff has adequately alleged that the dialing system used to contact him possessed the present capacity to store or produce telephone numbers and dial those numbers automatically. (SAC ¶ 27). This allegation alone is sufficient to survive a motion to dismiss.

The case relied upon by DiTommaso, *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), does not require dismissal at this stage. *Duguid* involved targeted communications, not calls made from a stored list using a random or sequential number generator. In *Duguid*, the Supreme Court specifically addressed this distinction, noting that the plaintiff's TCPA claim failed because "he

did not claim Facebook sent text messages to numbers that were randomly or sequentially generated. *Id.* at 1168. Rather, Facebook argued, "Duguid alleged that Facebook sent targeted, individualized texts to numbers linked to specific accounts." *Id.* The Court found that this type of targeted communication did not fall within the scope of the TCPA's ATDS definition. Here, however, Plaintiff alleges that DiTommaso used an ATDS to call from a stored list, using a random or sequential number generator to make its selections, not that DiTommaso targeted him individually based on specific account information.

Furthermore, the Amended Complaint alleges a "distinct pause and delay" before a live representative answered Plaintiff's call ( SAC ¶ 26). This "dead air time," as recognized in cases like *Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 U.S. Dist. LEXIS 223796 (N.D. Tex. Nov. 2, 2017), can be sufficient to plead the use of an ATDS. Courts consistently acknowledge the difficulty plaintiffs face in knowing the precise type of calling system used without the benefit of discovery and have found that details about the call, like the "dead air time," can support a reasonable inference of an ATDS. *See*, e.g., *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012) ("[C]ourts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and found that courts can rely on details about the call to infer the use of an ATDS."); *Libby v. Nat'l Republican Senatorial Comm.*, 2021 U.S. Dist. LEXIS 140103 (W.D. Tex. July 27, 2021) ("no plaintiff will have personal knowledge of the defendant's telephone system at the pleadings stage—only the defendant will have that knowledge.").

In *Libby*, the plaintiff alleged, much like Plaintiff here, that the defendant used an ATDS to call from a stored list, using a random or sequential number generator to select the numbers to dial. The Court found these allegations sufficient to state a plausible claim, even though the

5

defendant might have obtained the numbers on the list from various sources. Critically, the *Libby* court acknowledged that "[a] TCPA claim does not exist whenever someone receives an unwanted call from an automated system; liability is triggered only if the automated system 'us[es] a random or sequential number generator' to store or produce the phone numbers that are called." *Id.* at 7 (quoting *Duguid* at 117). The crucial distinction, therefore, is between targeted calls to specific individuals, like those at issue in *Duguid*, and calls made from a list using random or sequential number generation for selection, like those alleged in *Libby* and in the Amended Complaint in this case.

For the foregoing reasons, Plaintiff respectfully requests that the Court deny DiTommaso's Motion to Dismiss as to Plaintiff's ATDS claim.

### III. Plaintiff Has Adequately Pled Receipt of More Than One Telephone Solicitation.

DiTommaso contends that Plaintiff received only one phone call, and therefore, has not stated a claim for violation of the TCPA's DNC provisions. However, DiTommaso conveniently ignores the text messages sent to Plaintiff by Pastorelli, a purported owner of DiTommaso, after the initial phone call. (SAC ¶¶ 31-32). These unsolicited text messages, which encouraged Plaintiff to do business with DiTommaso, constitute "telephone solicitations" under the TCPA. As the court in *Shields v. Dick*, 2020 U.S. Dist. LEXIS 170189, at *8-12 (S.D. Tex. Sept. 16, 2020) explained, "The undesired buzzing of a cell phone from a text message, like the unwanted ringing of a phone from a call, is an intrusion into peace and quiet in a realm that is private and personal." The Court noted that the harms associated with unwanted text messages are precisely the harms Congress sought to address when enacting the TCPA. *Id.* Even if Plaintiff initially consented to receiving communications by requesting contact information, consumers have the right to revoke consent at any time through any reasonable means. *See Alvarez v. Medicredit, Inc.*, 2018 U.S. Dist. LEXIS

226740, *23-29 (S.D. Tex. Dec. 21, 2018). Here, Plaintiff clearly and unequivocally revoked consent via text message, a reasonable means, when he informed Pastorelli that he did not want to be contacted. ( SAC ¶ 32).

In this case, Plaintiff explicitly revoked consent from DiTommaso to further contact him. ( SAC ¶ 32). Despite this clear revocation of consent, Pastorelli sent two additional text messages. ( SAC ¶ 32). Therefore, Plaintiff has sufficiently alleged receipt of "more than one" telephone solicitation in violation of the TCPA. Additionally, DiTommaso's attempt to argue that Plaintiff "consented" to the text messages by requesting contact information during the phone call is disingenuous. Plaintiff was forced to feign interest and obtain business information simply to identify the company behind the unwanted call. (SAC ¶¶ 29-30). DiTommaso cannot now twist Plaintiff's attempt to end the unwanted solicitation into implied consent for further communications.

Moreover, if the Court were to find that Plaintiff did not plead more than one telephone solicitation, the Fifth Circuit has determined that even a single unsolicited text message can constitute an unreasonable interference with a right common to the public, similar to a public nuisance, and cause concrete harm, thus satisfying the injury-in-fact requirement for standing under the TCPA. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 691-693 (9th Cir. 2020). The facts here, where Plaintiff received unwanted text messages promoting DiTommaso's business after explicitly revoking consent, clearly support a claim of concrete harm and interference with Plaintiff's right to privacy.

For the reasons stated above, Plaintiff requests that the Court deny DiTommaso's Motion to Dismiss as to Plaintiff's claim.

**IV. Plaintiff has Sufficiently Plead Defendant is Liable Based on Vicarious Liability**

DiTommaso argues that Plaintiff has failed to plead facts sufficient to establish an agency relationship between DiTommaso and Meridian, specifically focusing on the lack of "actual authority," "apparent authority," and "ratification." However, the facts presented in the Second Amended Complaint plausibly establish all three forms of authority.

**a. Plaintiff Has Sufficiently Pled Defendant is Liable Based on Actual Authority.**

DiTommaso argues that Plaintiff has failed to plead facts sufficient to establish an agency relationship between DiTommaso and Meridian, specifically focusing on the lack of "actual authority." While DiTommaso correctly states that merely alleging a business relationship is insufficient to establish agency, the facts presented in the Second Amended Complaint go beyond simply stating a business relationship and plausibly establish actual authority.

First, the SAC alleges that DiTommaso "engaged in a business relationship with Meridian for the purpose of generating sales leads through telemarketing." (SAC ¶ 43). This specific purpose, directly tied to the conduct at issue in this case, suggests a level of control and direction beyond a mere arms-length business transaction. It is reasonable to infer that DiTommaso, seeking to generate sales leads, authorized Meridian to engage in telemarketing activities on its behalf. This aligns with the definition of actual authority, where an agent acts in accordance with the principal's wishes.

Second, the fact that Plaintiff was transferred to Remy Pastorelli, a purported owner of DiTommaso, during the initial call initiated by Meridian (SAC ¶ 30), strongly suggests that Meridian was acting as DiTommaso's agent with actual authority. This direct connection to DiTommaso during a call intended to generate sales leads for DiTommaso creates a strong inference of agency. It is highly unlikely that Meridian would have the ability to transfer a call to

a DiTommaso owner without DiTommaso's express authorization to engage in such lead generation activities.

Third, the Second Amended Complaint alleges that DiTommaso "accepted the benefits of Meridian's illegal telemarketing by taking live transfers of leads directly from Meridian." (SAC ¶ 44). This active participation in the telemarketing scheme, by directly receiving and presumably utilizing the illegally obtained leads, further supports a finding of agency and actual authority. DiTommaso is not merely a passive recipient of information; they are actively engaged in the process and reaping the benefits of Meridian's conduct. This acceptance of leads directly from Meridian demonstrates that DiTommaso was aware of and authorized Meridian's telemarketing activities.

This case is distinguishable from *Jones v. Royal Admin. Servs.*, 887 F.3d 443, 450-453 (9th Cir. 2018), where the Ninth Circuit found that the defendant did not exercise sufficient control over the telemarketing company to establish vicarious liability. In *Jones*, the defendant had limited control over the telemarketer's script and materials, and the telemarketer sold products for multiple companies. Critically, the telemarketer in *Jones* never attempted to sell the defendant's product during the calls at issue, so the defendant never specifically controlled any part of those calls.

Here, the facts strongly suggest that DiTommaso had direct control over Meridian's activities. The call was made for the sole purpose of generating leads for DiTommaso, before Plaintiff was transferred directly to a DiTommaso owner, Plaintiff was asked questions from the telemarketer relating to DiTommaso's business, and DiTommaso accepted the illegally obtained leads. These facts demonstrate a level of control and direct involvement absent in *Jones*, supporting a plausible claim of actual authority.

This case is also distinguishable from *Canary v. Youngevity Int'l, Inc.*, 2019 U.S. Dist. LEXIS 46429 (N.D. Cal. Mar. 28, 2019). In *Canary*, the plaintiff alleged that the defendant encouraged its distributors to use telemarketing, reviewed marketing materials, and paid commissions on sales. However, the court found these allegations too general to establish actual authority. The court noted that the defendant's policies prohibited illegal telemarketing practices and that the plaintiff failed to allege facts showing the defendant controlled the content of the specific call at issue.

Unlike *Canary*, Plaintiff here has alleged specific facts demonstrating DiTommaso's control and authorization of Meridian's telemarketing activities. The call was made for the sole purpose of generating leads for DiTommaso, Plaintiff was transferred directly to a DiTommaso owner during the call, and DiTommaso accepted the illegally obtained leads. Moreover, DiTommaso, in its Terms and Conditions, states that its customers will be "receiving calls and messages, including auto-dialed and pre-recorded messages calls and SMS messages … from the RCN Group, its affiliates, marketing partners, agents, and others calling at [its] request or on its behalf." (SAC ¶ 42). These facts, taken together, plausibly establish that Meridian acted with actual authority from DiTommaso.

### b. Plaintiff has Sufficiently Pled DiTommaso is Liable Based on Apparent Authority

Regarding apparent authority, DiTommaso argues that the text messages do not mention DiTommaso by name and therefore cannot establish apparent authority. However, DiTommaso misconstrues the nature of apparent authority and ignores the relevant facts alleged in the Second Amended Complaint.

Apparent authority does not require explicit pronouncements by the principal. It arises from the principal's manifestations, which can include conduct, that lead a third party to reasonably

believe an individual is acting as the principal's agent. *See Restatement (Third) Agency § 2.03*. In this case, the relevant manifestation is not the text messages themselves, but the circumstances surrounding the initial phone call.

The SAC alleges that Plaintiff was transferred to Remy Pastorelli, a purported owner of DiTommaso, during a call initiated by Meridian and intended to generate sales leads for DiTommaso. (SAC ¶¶ 30-31). This transfer, occurring within the context of a sales call initiated on DiTommaso's behalf, would lead a reasonable person to believe that Meridian was acting with DiTommaso's authority. A reasonable consumer, like Plaintiff, would not expect to be transferred to the owner of a company during a sales call unless the company initiating the call had authorized such a transfer. Furthermore, Plaintiff only discovered that DiTommaso was the principal behind the RCN Group, the name used by Pastorelli, after extensive searching through DiTommaso's website and policies. (SAC ¶¶ 13, 31). This discovery process further highlights the deceptive nature of DiTommaso's conduct and the difficulty Plaintiff faced in identifying the true principal.

This case is distinguishable from *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26 (2d Cir. 2001), where the court found that the plaintiff failed to present sufficient evidence to show that the defendant knew or should have known that the agent was exceeding its authority. In *Sphere Drake*, the plaintiff's argument relied on the outrageous nature of the contracts, which the court found to be mere speculation and insufficient to establish knowledge of the agent's lack of authority. Here, Plaintiff's claim of apparent authority is not based on speculation, but on DiTommaso's own conduct in allowing the transfer to Pastorelli during a sales call initiated on its behalf. This conduct directly manifested to Plaintiff that Meridian was acting as DiTommaso's agent.

The facts alleged in the Second Amended Complaint, taken together, create a plausible inference that DiTommaso, through its conduct in allowing the transfer to Pastorelli during a sales call, manifested to Plaintiff that Meridian was acting as its agent. This is sufficient to plead apparent authority.

### c. Plaintiff Has Sufficiently Pled Facts to Allege Ratification.

Regarding ratification, DiTommaso argues that Plaintiff has not alleged that DiTommaso had "full knowledge of the facts," including that Plaintiff was on the do-not-call list, and therefore cannot establish ratification. However, DiTommaso sets an unreasonably high bar for pleading ratification at the motion to dismiss stage.

Plaintiff has alleged that DiTommaso "accepted the benefits of Meridian's illegal telemarketing by taking live transfers of leads directly from Meridian" and "failed to take effective steps … to force Meridian to cease calling consumers that were registered in the Do Not Call Registry" (SAC ¶¶ 44-45). This allegation, taken as true, is sufficient to plausibly allege ratification. DiTommaso's acceptance of leads generated through illegal telemarketing practices, knowing that those leads were obtained through telemarketing, suggests that DiTommaso, at a minimum, implicitly ratified Meridian's conduct.

This case is distinguishable from *Rogers v. Postmates Inc.*, 2020 U.S. Dist. LEXIS 121831 (N.D. Cal. July 9, 2020), where the court dismissed the plaintiff's ratification claim because the plaintiff failed to allege that the defendant knew or should have known that its agent was sending text messages in violation of the TCPA. The court in *Rogers* emphasized that knowledge of an agent engaging in a "commonplace marketing activity" like text messaging is not enough for ratification. The plaintiff needed to allege "red flags" that would have alerted the defendant to the agent's illegal conduct.

Here, Plaintiff has alleged more than just DiTommaso's knowledge of Meridian's telemarketing activities. Plaintiff has alleged that DiTommaso directly benefited from Meridian's illegal telemarketing by accepting live transfers of leads. This direct benefit, coupled with the knowledge that the leads were generated through telemarketing, creates a plausible inference of ratification. Unlike in *Rogers*, where the defendant merely knew about the text messaging campaign, DiTommaso's acceptance of the illegally obtained leads suggests a conscious choice to benefit from Meridian's unlawful actions.

This case is also distinguishable from *NECA-IBEW Rockford Local Union 364 Health & Welfare Fund v. A&A Drug Co.*, 736 F.3d 1054 (7th Cir. 2013), where the Seventh Circuit found ratification based on the defendant's knowledge of both the contract terms and the benefits received under the contract. The court in *NECA-IBEW* emphasized that the defendant had "full knowledge of the facts" necessary for ratification. However, the court also acknowledged that a principal's knowledge can be imputed from its employees or agents.

In this case, while Plaintiff has not explicitly alleged DiTommaso's full knowledge of the facts, including Plaintiff's presence on the do-not-call list, Plaintiff has alleged enough to plausibly infer ratification. DiTommaso's acceptance of the illegally obtained leads, coupled with the knowledge that those leads were generated through telemarketing, suggests that DiTommaso was, at a minimum, willfully ignorant of the facts surrounding Meridian's conduct. As the court in *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068 (9th Cir. 2019) explained, a principal can ratify the act of a third party even if it does not know all the material facts, as long as it is aware that it does not know the material facts and ratifies anyway.

Requiring Plaintiff to plead DiTommaso's specific knowledge of Plaintiff's presence on the do-not-call list at this stage would be overly burdensome. Plaintiff is not privy to DiTommaso's

internal knowledge and practices. Discovery is necessary to determine the full extent of DiTommaso's knowledge and whether it knowingly ratified Meridian's illegal conduct. Dismissal at this stage would be premature. Plaintiff has alleged sufficient facts to support a plausible claim of agency, including ratification, and discovery is necessary to determine the full extent of the relationship between DiTommaso and Meridian.

V. **Plaintiff's Texas Business and Commerce Code § 305 Claim is Properly Pled Because Plaintiff Alleged a Violation of the TCPA.**

DiTommaso's argument that Plaintiff cannot establish a violation of the TTSA because he cannot establish a violation of the TCPA is without merit. As demonstrated in the preceding arguments, Plaintiff has adequately pled a cause of action under the TCPA. Furthermore, the case *Shields*, the court went on to explain that even an alleged violation of the TCPA, without an actual finding of liability, can be enough to satisfy the injury-in-fact requirement for standing. The court stated that "the receipt of an unwanted automated text message poses the exact type of concrete harm that Congress chose to recognize as legally cognizable in the TCPA." *Id.* at 9. This reasoning demonstrates that a plausible claim of a TCPA violation, as Plaintiff has alleged here, can be sufficient to support a TTSA claim.

Since Plaintiff has standing to bring a TCPA claim and has adequately alleged a violation of the statute, DiTommaso's argument that Plaintiff's TTSA claims must fail is unfounded. Plaintiff respectfully requests that the Court deny DiTommaso's Motion to Dismiss as to Plaintiff's claims under the TTSA.

VI. **Plaintiff Has Adequately Pled DiTommaso as a "Seller" Under TBCC § 302.101.**

DiTommaso claims that Plaintiff failed to adequately plead that DiTommaso acted as a "seller" under TBCC § 302.101. This case is distinguishable from *Clewett v. Coverage One Ins. Grp.*, LLC, 2024 U.S. Dist. LEXIS 80960, *2-10, where the plaintiff repeatedly alleged that the

defendant made calls "on behalf of" another company, and never alleged that the defendant made calls on its own behalf. Here, Plaintiff has alleged that DiTommaso engaged in a business relationship with Meridian for the purpose of generating sales leads, accepted the benefits of Meridian's telemarketing by taking live transfers of leads, and failed to take steps within its power to force Meridian to cease calling consumers that were registered in the DNC. (SAC ¶¶ 43-45). These allegations, taken together, infers that DiTommaso was acting as a "seller" under the statute. Moreover, the SAC alleges that Plaintiff spoke directly with Pastorelli, an owner of DiTommaso, during the initial call. (SAC ¶ 30). This direct involvement by DiTommaso in the solicitation process further strengthens the inference that DiTommaso was acting as a "seller" and is not simply a passive recipient of leads generated by an independent third party.

Defendant relies on a flawed understanding of the term "seller" as used in Tex. Bus. & Com Code § 302.101. While Tex. Bus. & Com Code § 302.001(5) defines a "seller" as "a person who makes a telephone solicitation on the person's own behalf," this definition must be read in conjunction with Tex. Bus. & Com Code § 302.002, which clarifies that a person "makes a telephone solicitation if the person effects or attempts to effect a telephone solicitation." This broader definition encompasses those who orchestrate and direct telemarketing calls, even if they do not physically make them.

Furthermore, the Texas Do Not Call Act must be construed liberally to achieve its purpose of protecting consumers from unwanted solicitations. Tex. Bus. & Com Code § 302.003 states: "This chapter shall be liberally construed and applied to promote its underlying purpose to protect persons against false, misleading, or deceptive practices in the telephone solicitation business." A narrow interpretation that focuses solely on the entity placing the call would undermine this consumer protection goal. In this case, Plaintiff has alleged that DiTommaso, as the principal,

15

purposefully hired "marketing partners" to make calls on its behalf (SAC ¶ 42). These allegations, taken as true, establish that DiTommaso "effected or attempted to effect" the telephone solicitation through Meridian, making DiTommaso a "seller" under the Act and liable for violations of Tex. Bus. & Com Code § 302.101.

Defendant's rigid interpretation of Tex. Bus. & Com Code § 302.101 is unsustainable and would eliminate the Act's consumer protections. It would allow those who orchestrate and profit from unlawful telemarketing schemes to avoid liability by simply having someone else place the calls. This Court should adopt a more realistic and consumer-friendly interpretation of the statute and recognize that Plaintiff has adequately alleged DiTommaso's role as a "seller" under Tex. Bus. & Com Code § 302.101 by alleging that he directed and authorized the unlawful telemarketing call.

DiTommaso's reliance on the "isolated transaction" exemption is also misplaced. The "isolated transaction" exemption must be narrowly construed to avoid undermining the purpose of Chapter 302 of Tex. Bus. & Com. Code, which is to protect consumers from unwanted telemarketing calls. The allegations in the Second Amended Complaint are sufficient to plausibly allege that the call to Plaintiff was not an isolated transaction. § 302.061 states that "This chapter does not apply to a person engaging in a telephone solicitation that: (1) is an isolated transaction; and (2) is not done in the course of a pattern of repeated transactions of a similar nature." The plain meaning of this statute is clearly not met in this case, as Plaintiff has alleged an ongoing business relationship between DiTommaso and Meridian for the purpose of generating sales leads through telemarketing. This suggests a pattern of repeated transactions, not an isolated transaction.

Dismissal of Plaintiff's § 302.101 claim on the basis that DiTommaso was not a "seller" would be premature. Plaintiff has pleaded sufficient facts to state a plausible claim, and discovery is necessary to determine the precise nature of DiTommaso's role in the telemarketing scheme.

## Conclusion

For all of these reasons, the Court should deny Defendant's motion in its entirety.

Dated: August 20, 2024

        Respectfully submitted,

        */s/Paulina Almanza*
        Paulina Almanza

        **ALMANZA TERRAZAS PLLC**
        13423 Blanco Rd, PMB 8098
        San Antonio, Texas 78216
        Telephone: 512-900-9248
        Email: paulina@almanza.legal

        State Bar No. 24109580
        Attorney for Plaintiff and the putative class

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 20, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF, and it is being served this day on all counsel of record via transmission of Notice of Electronic Filing generated by CM/ECF.

        */s/Paulina Almanza*
        Paulina Almanza