UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

MARK ORTEGA, INDIVIDUALLY
AND ON BEHALF OF ALL OTHERS
SIMILARLY SITUATED;

    *Plaintiff*,                                                                                                         Case No. 5:24-CV-00369-JKP

v.

DITOMMASO INC., DATA KING OF
NEW YORK INC., MERIDIAN SER-
VICES, LLC,

    *Defendants*.

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant DiTommaso Inc.'s ("DiTommaso") Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *ECF No. 18*. Plaintiff Mark Ortega filed a Response to the Motion and DiTommaso filed a Reply. *ECF Nos. 20, 24*. Upon consideration, the Court concludes the Motion shall be GRANTED IN PART and DENIED IN PART.

### BACKGROUND

This case arises out of unauthorized telephonic communications Plaintiff Mark Ortega ("Ortega") alleges receiving from Defendants DiTommaso Inc. ("DiTommaso"), Data King of New York Inc. ("Data King"), and Meridian Services, LLC ("Meridian") (collectively, "Defendants"). *ECF No. 16*. Ortega sues Defendants on behalf of himself and similarly situated individuals, seeking class certification. *Id*. He alleges violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*., and the Texas Business and Commerce Code § 300 *et seq*. *Id*. The relevant facts, taken in the light most favorable to Ortega, are as follows.

Ortega alleges he is "the regular and sole user of his cellular telephone number, which is (210) 744-XXXX." *ECF No. 16 at 3*. He registered this telephone number with the National Do-Not-Call Registry on or about January 23, 2012, to avoid receiving unwanted telemarketing and solicitation calls. *Id. at 4*. Despite this, Ortega alleges Meridian[1], on behalf of DiTommaso, placed telemarking calls to Ortega's telephone number on February 29, 2024. *Id. at 3,4,13*.

When Ortega answered one of the calls, there was a distinct pause and delay before anyone answered. *Id. at 4*. Because DiTommaso was not identified through the Caller ID or at the start of the call, Ortega stayed on the line to identify the company calling. *Id. at 5*

During the call, a representative spoke and asked Ortega questions about business loans. *Id. at 5*. The representative then transferred the call to Remy Pastorelli ("Pastorelli"), an owner of DiTommaso. *Id. at 5*. Pastorelli spoke with Ortega about a line of credit. *Id. at 5*.

After the call, Ortega received a text message from Pastorelli stating, "this is Remy Pastorelli with The RCN Group."[2] *Id. at 5*. Ortega informed Pastorelli via text message he was not to be contacted further as his telephone number is registered on the National Do-Not-Call Registry. *Id. at 5*. Pastorelli sent two additional text messages stating, respectively, "We just spoke before I don't know if you remember me" and "line of credit guy here." *Id. at 5*.

On or about March 4, 2024, Ortega's attorney sent a letter to DiTommaso communicating Ortega: (1) is registered in the National Do-Not-Call Registry, (2) did not consent to receiving communications from DiTommaso, and (3) demands damages. *Id. at 5*. The next day, DiTommaso responded stating DiTommaso engages a third-party call center to conduct telemarking campaigns on its behalf. *Id.*

---

[1] Ortega alleges Meridian and Data King have common management and are under common control. *Id. at 3*.
[2] Ortega alleges DiTommaso offers business loans under the name RCN Group Inc. *Id. at 3*.

Following these events, Ortega filed suit on April 10, 2024, alleging Defendants' unauthorized telephonic communications harmed him in the form of "annoyance, nuisance, [] invasion of privacy, and occupied and otherwise disturbed the use and enjoyment of his phone." *Id.* at 5.

## 12(b)(6) LEGAL STANDARD

To provide opposing parties fair notice of what the asserted claim is and the grounds upon which it rests, every pleading must contain a short and plain statement of the claim showing the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted claims. *See id.; see also Twombly*, 550 U.S. at 563 n.8. Thus, to qualify for dismissal under Rule 12(b)(6), a Complaint must, on its face, show a bar to relief. Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.*, 9 F. Supp.2d 734, 737–38 (S.D. Tex. 1998).

In assessing a Motion to Dismiss under Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748

F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (quoting *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999)).

## ANALYSIS

**I.   Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.***

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA"), contains two distinct sections that grant individuals a private right of action. Under § 227(b), the TCPA regulates various telecommunications devices and prohibits the use of certain technologies for calling several types of end-users without an emergency purpose or prior express consent of the called party. *Hunsinger v. Dynata LLC*, No. 3:22-CV-00136, 2023 WL 2377481 at *4 (N.D. Tex. Feb. 7, 2023) (citing 47 U.S.C. § 227(b)). The Supreme Court has succinctly outlined the four prohibited practices:

> First, the Act makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call. *See* 47 U.S.C. § 227(b)(1)(A). Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D).

*Id.* (citing *Mims v. Arrow Fin. Svcs., LLC*, 565 U.S. 368, 373 (2012)). The TCPA grants a private right of action to individuals "based on a violation of [§ 227(b)] or the regulations prescribed under [§ 227(b)]." 47 U.S.C. § 227(b)(3). Even one instance of a violation of § 227(b) is actionable in the Fifth Circuit. *See Cranor v. 5 Star Nutrition, LLC*, 998 F.3d 686, 689-91 (5th Cir. 2021).

4

Under § 227(c), the TCPA delegates authority to the Federal Communications Commission (FCC) to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). This subsection grants a private right of action to individuals "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." 47 U.S.C. § 227(c)(5). Unlike § 227(b), § 227(c) does not regulate automated technologies; rather, it regulates calling practices to protect the rights of privacy of those registered with the Do-Not-Call Registry.

### A. 47 U.S.C. § 227(b)

DiTommaso argues Ortega's 47 U.S.C. § 227(b) cause of action must be dismissed because Ortega did not allege use of an automatic telephone dialing system ("ATDS"). *ECF No. 18 at 5–7*. Under § 227(b), it is:

> [U]nlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> > (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> >
> > > (iii) to any telephone number assigned to a . . . cellular telephone service . . .

47 U.S.C. § 227(b)(1)(A)(iii). Thus, a violation of § 227(b)(1)(A)(iii) occurs if: "(1) the defendant called a cellular telephone number; (2) using an [ATDS] or an artificial or prerecorded voice; (3) without the recipient's prior express consent." *Gardner v. Navient, LLC*, No. 3:24-CV-00198, 2024 WL 3363016 at *2–3 (N.D. Tex. June 7, 2024) (citations omitted). As to the required use of an ATDS:

5

> [T]he TCPA defines an ATDS as "equipment which has the capacity – (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). [In 2021,] the Supreme Court resolved a circuit split "regarding whether an autodialer must have the capacity to generate random or sequential phone numbers," or whether an ATDS "need only have the capacity to store numbers to be called and to dial such numbers automatically." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 401 (2021) (internal quotations omitted). The Court held that, "[t]o qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Id*. at 399. Thus[,] to establish a claim under § 227(b), "the equipment in question must use a random or sequential number generator," not merely auto-dial stored numbers. *Id*. at 404.

*Id. at 3* (citations omitted). Here, while Ortega does allege the use of an ATDS, those allegations are conclusory considering, "since *Duguid*, [circuit] courts[3] have emphasized the need to plausibly allege the use of an ATDS by focusing on facts that could show the defendant's device used a random or sequential number generator to produce or store phone numbers (as opposed to another method)." *Id. at 3*.

As an example, the United States Court of Appeals for the Third Circuit recently summarized one of its post-*Duguid* decisions, *Panzarella v. Navient Solutions, Inc.*, 37 F.4th 867 (3d Cir. 2022):

> In *Panzarella*, we held that a loan servicer did not violate the TCPA because there was no evidence that its device used a random or sequential number generator to produce or store phone numbers. We posed a hypothetical of a device that could make phone calls in two modes: automatic-mode, where the device dials random or sequentially generated phone numbers, or list-mode, where the device dials telephone numbers from a customer list. We explained that unlike automatic-mode calls, list-mode calls would not "threaten the harm the TCPA targets," namely, "telemarketing 'that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity.'" "Congress would have little reason," we noted, "to expose [the defendant] to liability for its list-mode calls as these calls do not present these risks."

---

[3] *See Borden v. eFinancial, LLC*, No. 21-35746, 2022 WL 1695561 (9th Cir. Nov. 16, 2022); *Soliman v. Subway Franchisee Advert. Fund Tr., LTD.*, 101 F.4th 176 (2d. Cir. 2024).; *Perrong v. Montgomery Cnty. Democratic Committee*, No. 23-2415, 2024 WL 1651274 (3d Cir. Apr. 17, 2024)

*Perrong v. Montgomery Cnty. Democratic Committee*, No. 23-2415, 2024 WL 1651274, at *1 (3d Cir. Apr. 17, 2024) (quoting *Panzarella*, 37 F.4th 867 at 881–82) (internal citations omitted).

Ortega's Second Amended Complaint lacks facts from which the Court may infer Meridian, on behalf of DiTommaso, contacted Ortega using a random of sequential number generator. Ortega alleges:

> Upon information and belief, Meridian placed telemarketing calls to Plaintiff's number on February 29, 2024[,] using an automatic telephone dialing system.

*ECF No. 16 at 13*. Ortega further alleges:

> When Plaintiff answered the call, there was a distinct pause and delay before anyone answered.
>
> . . .
>
> The distinct pause and delay before a live representative answered Plaintiff's call demonstrates that the dialing system used possessed the present capacity to store or produce telephone numbers and dial those numbers automatically. This shows that the system was working through a *list* of numbers and not operating under the direct control of a human caller for each individual call.

*Id. at 4* (emphasis added). Despite Ortega's arguments otherwise, the Supreme Court's decision in *Diguid* is explicit. In reversing the Ninth Circuit, the Court held the phrase "using a random or sequential number generator" modifies both "store" and "produce," such that to qualify as an ATDS, a device "must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." *Duguid*, 592 U.S. at 399, 402. As plead, Ortega alleges the "system" automatically dialed telephone numbers from "a list of numbers." *ECF No. 16 at 4*. This does not violate the TCPA.

To the extent Ortega attempts to remedy the deficiencies of his Second Amended Complaint in his Response to DiTommaso's Motion to Dismiss, "[i]t is axiomatic that the complaint

7

may not be amended by briefs in opposition to a motion to dismiss.'" *Roebuck v. Dothan Sec., Inc.*, 515 F. App'x 275, 280 (5th Cir. 2013).

As such, DiTomasso's Motion to Dismiss is granted with respect to Ortega' 47 U.S.C. § 227(b) cause of action. *ECF No. 18*.

**B.     47 U.S.C. § 227(c)**

DiTommaso argues Ortega's 47 U.S.C § 227(c) cause of action must be dismissed because Ortega pleads receipt of only one phone call and two follow-up text messages that Ortega himself requested.[4] *ECF No. 18 at 7–8*. Under § 227(c), "[a] person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring an action "in an appropriate court." 47 U.S.C. § 227(c)(5). While DiTommaso argues Ortega "only alleges and identifies a single telephone call in his Second Amended Complaint," the Court disagrees. In his Second Amended Complaint, Ortega alleges Meridian, on behalf of DiTommaso, placed telemarketing and solicitation "calls" to Ortega's telephone number on February 29, 2024. *ECF No. 16 at 3, 4, 13*. Therefore, at this early stage and in accordance with 47 U.S.C. § 227(c)(5), the Court finds Ortega sufficiently alleges receipt of more than one call from Meridian, on behalf of DiTomasso.

To the extent DiTommaso encourages the Court look to Ortega's Original Complaint in support of its argument Ortega himself requested two follow-up text messages from DiTommaso, the Court declines to do so at this time. *ECF No. 18 at 8*. The general rule in the Fifth Cir-

---

[4] DiTommaso does not dispute the TCPA's prohibitions also extend to sending text messages, arguing only Ortega requested DiTommaso send them. *ECF No. 18 at 7–8*. The Court therefore assumes it does without considering or resolving that issue. *See, e.g., Facebook, Inc. v. Duguid*, 592 U.S. 395, 400 n. 2 (2021) (assuming it does "without considering or resolving that issue" (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016), *as revised* (Feb. 9, 2016))); *See also Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991 at *2 (S.D. Tex. July 9, 2020) ("Although the TCPA does not define what constitutes a 'call,' the Federal Communications Commission, the agency charged with implementing the TCPA, has interpreted the TCPA to 'encompass . . . both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls,' generally termed text messages." (quoting *In re Rules & Regulations Implementing the TCPA of 1991*, 18 F.C.C. Rcd. 14014, 14115 (2003))).

cuit is that statements in superseded pleadings are no longer treated as judicial admissions. *See Hibernia Nat'l Bank v. Carner*, 997 F.2d 94, 101 (5th Cir. 1993) (refusing to consider factual allegations in the original complaint that were "amended away" by the amended complaint) (citations omitted). Indeed, plaintiffs routinely amend complaints to correct factual inadequacies in response to a motion to dismiss. *See* 6 Charles A. Wright, et al., Federal Practice and Procedure § 1474 (3d ed. 2021). The superseded allegations may, however, be considered as evidence at the summary judgment or trial stage. *White v. ARCO/Polymers, Inc.*, 720 F.2d 1391, 1396 (5th Cir. 1983).

DiTommaso next argues Ortega's 47 U.S.C. § 227(c) cause of action must be dismissed because Ortega does not plead the existence of an agency relationship between Meridian and DiTommaso. *ECF No. 18 at 9–14*. To support a TCPA cause of action or a cause of action under the FCC's regulations, a plaintiff can allege either direct liability by showing that the defendant initiated the offending telemarketing calls, or vicarious liability by showing that an entity in an agency relationship with the defendant initiated the calls. *Horton v. MultiPlan Inc.*, No. 3:23-CV-02098, 2024 WL 3380236 at *5 (N.D. Tex. June 7, 2024) (citing *Cunningham v. Lifestyles Dev., LLC*, No. 4:19-CV-00006, 2019 WL 4282039, at *3–4 (E.D. Tex. Aug. 8, 2019). A plaintiff can establish vicarious liability in this context by common law agency principles. *Id*. (citations omitted). An agency relationship exists where a principal "manifests assent to [an agent] . . . that the agent shall act on the principal's behalf and subject to the principal's control." *Id*. (citations omitted). Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to the inference of an agency relationship using generalized as opposed to evidentiary facts. *Id*. (citations omitted).

Here, Ortega alleges Meridian, on behalf of DiTommaso, placed telemarketing and solicitation "calls" to Ortega's telephone number on February 29, 2024. *ECF No. 16 at 3,4,13*. When Ortega answered one of the calls, there was a distinct pause and delay before anyone answered. *Id*. at 4. Because DiTommaso was not identified through the Caller ID or at the start of the call, Ortega stayed on the line to identify the company calling. *Id*. at 5. During the call, a representative spoke and asked Ortega questions about business loans. *Id*. at 5. The representative then transferred the call to Remy Pastorelli ("Pastorelli"), an owner of DiTommaso. *Id*. at 5. Pastorelli spoke with Ortega about a line of credit. *Id*. at 5. After the call, Ortega received a text message from Pastorelli stating, "this is Remy Pastorelli with The RCN Group." *Id. at 5*.

In addition, Ortega alleges DiTommaso's business model demonstrates a reliance on telemarketing and DiTommaso engaged in a business relationship with Meridian for the purpose of generating sales leads through telemarketing. *Id. at 7–8*. Specifically, Ortega alleges DiTommaso outsourced its telemarketing efforts to Meridian and accepted the benefits by taking live transfers of sales leads. *Id. at 8*. "By having Meridian initiate the calls on its behalf to generate new business," Ortega further alleges, "DiTommaso [']manifest[ed] assent to another person . . . that the agent shall act on the principal's behalf and subject to the principal's control['] as described in the Restatement (Third) of Agency." *Id. at 8*.

Ortega's Second Amended Complaint sufficiently alleges facts to give rise to an inference of an agency relationship between DiTommaso and Meridian. Ortega need only provide generalized as opposed to specific evidentiary facts at this early stage and he has alleged after receiving a call from Meridian, the representative transferred the call to Pastorelli, an owner of DiTommaso. Ortega also alleges after the call he received a text message from Pastorelli and details DiTommaso and Meridian's business relationship. These facts provide more than a bare as-

sertion of vicarious liability. While DiTommaso insists Ortega's "vague statements of general control . . . are insufficient," Ortega cannot be expected to better explain the contours of the business relationship between the two entities without the benefit of discovery. *ECF No. 18 at 12*.

Therefore, at this early stage and in accordance with common law agency principles, the Court finds Ortega sufficiently alleges the existence of an agency relationship between Meridian and DiTommaso. Taking Ortega's allegations as true, the Court can reasonably infer DiTommaso, through an agency relationship with Meridian, directed the sending of the calls and text messages to Ortega without his consent. *See Horton v. MultiPlan Inc.*, No. 3:23-CV-02098, 2024 WL 3380236 at *6 (N.D. Tex. June 7, 2024).[5] As such, DiTomasso's Motion to Dismiss is denied with respect to Ortega's 47 U.S.C. § 227(c) cause of action. *ECF No. 18*.

## II.   Texas Business and Commerce Code § 300 *et seq.*

Ortega asserts several causes of action under Texas law, including (1) DiTomasso violated § 302.101 of the Texas Business Commerce Code, requiring any seller soliciting products in Texas to hold a current "registration certificate for the business location from which the telephone solicitation is made," and (2) DiTomasso violated § 305.053 of the Code, authorizing any person who received "a communication that violates" the TCPA to recover damages. *ECF No. 16 at 13–15*. DiTomasso argues the Court should dismiss both causes of action. *ECF No. 18 at 14–17*.

### A.   Texas Business and Commerce Code § 302.101

---

[5] *See also Cunningham v. Politi*, No. 4:18-CV-00362, 2019 WL 2519568 at * 7 (E.D. Tex. Apr. 30, 2019) (concluding allegations a caller represented she was calling on behalf of defendant and then plaintiff was connected to defendant was enough to establish agency relationship); *Callier v. Nat. United Grp., LLC*, No. 3:21-CV-00071, 2021 WL 5393829, at *7 (W.D. Tex. Nov. 17, 2021) (concluding the plaintiff had plausibly alleged an agency relationship by pleading facts tracing the calls to the defendant); *Horton v. Advantage One Brokers Corp.*, No. 3:22-CV-02474, 2024 WL 251172, at *5 (N.D. Tex. Jan. 4, 2024) (same).

First, DiTomasso argues Ortega's Texas Business and Commerce Code § 302.101 cause of action must be dismissed because Ortega did not plausibly allege DiTommaso is a "seller" as contemplated by the statute. *ECF No. 18 at 10–11*. § 302.101 makes it a violation for "a seller" to "make a telephone solicitation . . . to a purchaser located in this state unless the seller holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101. § 302.001 defines a "seller" as "a person who makes a telephone solicitation on the person's own behalf." *Id*. § 302.001(5). A "telephone solicitation" is further defined as "a telephone call" made "to induce a person to purchase, rent, claim, or receive an item." *Id.* § 302.001(7). The Code instructs courts to apply the scheme liberally to protect persons "against false, misleading, or deceptive practices in the telephone solicitation business." *Id*. § 302.003. Moreover, the statute places the burden of proving an exemption on the party "claiming the exemption" in civil proceedings. *Id*. § 302.051.

Common law agency principles apply here, too, and the conduct of the telemarketer who makes the calls can be imputed to the seller if the telemarketer is an agent of the seller. *Callier v. Multiplan, Inc.*, No. 6:20-CV-00318, 2021 WL 8053527 (W.D. Tex. Aug. 26, 2021); *Johnson v. Palmer Admin. Servs., Inc.*, No. 6:22-CV-00121, 2022 WL 17546957, at *9 (E.D. Tex. Oct. 20, 2022) (stating the plaintiff presented sufficient factual allegations for the court "to infer the existence of a principal-agent relationship" between the telemarketer and the defendant and thus impute the telemarketer's conduct to the defendant); *Salaiz v. Beyond Fin., LLC*, No. 6:23-CV-00006, 2023 WL 6053742, at *5 (W.D. Tex. Sept. 18, 2023) (finding the plaintiff had "plausibly alleged the defendant effected or attempted to effect calls by hiring telemarketers to make those calls.").

DiTommaso states "[t]hroughout the Second Amended Complaint, [Ortega] repeatedly alleges that Meridian, not DiTommaso," initiated the alleged calls. *ECF No. 18 at 15*. As discussed above, however, at this early stage and in accordance with common law agency principles, the Court finds Ortega sufficiently alleges the existence of an agency relationship between Meridian and DiTommaso. Although it is unclear the specifics of DiTommaso's role, it is not unreasonable to infer DiTommaso benefitted from the calls. While DiTommaso may be able to contest its status as a seller at summary judgment, at this stage, Ortega has plausibly alleged a cause of action. Accordingly, in this regard, DiTommaso's Motion to Dismiss is denied. *ECF No. 18*.

### B.    Texas Business and Commerce Code § 305.053

Second, DiTomasso argues Ortega's Texas Business and Commerce Code § 305.053 cause of action must be dismissed because Ortega did not plausibly allege a violation of the TCPA. *ECF No. 18 at 14–15*. § 305 provides that any "person who receives a communication that violates [the TCPA] . . . may bring an action in this state against the person who originates the communication." Tex. Bus. & Com. Code § 305.053. As discussed above, at this early stage and in accordance with 47 U.S.C. § 227(c)(5), the Court finds Ortega sufficiently alleges receipt of more than one call from Meridian, on behalf of DiTomasso. Thus, Ortega has plausibly alleged a cause of action here as well. Accordingly, in this regard, DiTommaso's Motion to Dismiss is also denied. *ECF No. 18*.

### CONCLUSION

Generally, plaintiffs must be "given ample opportunity to plead their statutory claims," and "district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case." *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 567 (5th

Cir. 2002); *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Here, DiTommaso conferred with Ortega about its intention to file a Motion to Dismiss. *See ECF No. 14*. Ortega then advised the Court he intended to amend his Complaint. *Id*. The Court provided Ortega the opportunity to amend the Complaint, but admonished he would not be given another opportunity should DiTommaso file a meritorious Motion to Dismiss. *ECF No. 15*. Based upon this history, the Court concludes it gave Ortega ample opportunity to plead his best case. *See Herrmann Holdings*, 302 F.3d at 567; *Great Plains Trust Co.*, 313 F.3d at 329.

Consequently, DiTommaso's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Ortega's 47 U.S.C. § 227(b) cause of action is DISMISSED pursuant to Federal Rule of Civil Procedure 12(b)(6). Ortega's 42 U.S.C. § 227(c) and Texas Business and Commerce Code §§ 302.101 and 305.053 causes of action remain for further litigation.

It is so ORDERED.
SIGNED this 6th day of February, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE